

# NATIONAL ASSOCIATION OF REALTORS®

# 2023 HANDBOOK



# MULTIPLE LISTING POLICY

# Handbook on Multiple Listing Policy

NATIONAL ASSOCIATION OF REALTORS®
430 North Michigan Avenue
Chicago, Illinois  60611-4087

Thirty Fifth Edition: 2023

The compliance classification category of each item is denoted by the following symbol:

[M] Mandatory*

[R] Recommended

[O] Optional

[I] Informational

For ease of reference, all amended
provisions are shaded to highlight additions.

---

*Adoption is necessary to ensure compliance with mandatory policies established by the NATIONAL ASSOCIATION OF REALTORS® Board of Directors and coverage under the National Association's master professional liability insurance policy. Local adoption is required by March 1, 2023.

# Part One:  Key Definitions

**Section 1**
**Multiple Listing Service (MLS) Defined**

A multiple listing service is:

- a facility for the orderly correlation and dissemination of listing information so participants may better serve their clients and customers and the public
- a means by which authorized participants make blanket unilateral offers of compensation to other participants (acting as subagents, buyer agents, or in other agency or nonagency capacities defined by law)
- a means of enhancing cooperation among participants
- a means by which information is accumulated and disseminated to enable authorized participants to prepare appraisals, analyses, and other valuations of real property for bona fide clients and customers
- a means by which participants engaging in real estate appraisal contribute to common databases *(Revised 11/04)*

Entitlement to compensation is determined by the cooperating broker's performance as procuring cause of the sale (or lease). *(Revised 11/94)*

While offers of compensation made by listing brokers to cooperating brokers through MLS are unconditional,* a listing broker's obligation to compensate a cooperating broker who was the procuring cause of sale (or lease) may be excused if it is determined through arbitration that, through no fault of the listing broker and in the exercise of good faith and reasonable care, it was impossible or financially unfeasible for the listing broker to collect a commission pursuant to the listing agreement. In such instances, entitlement to cooperative compensation offered through MLS would be a question to be determined by an arbitration hearing panel based on all relevant facts and circumstances including, but not limited to, why it was impossible or financially unfeasible for the listing broker to collect some or all of the commission established in the listing agreement; at what point in the transaction did the listing broker know (or should have known) that some or all of the commission established in the listing agreement might not be paid; and how promptly had the listing broker communicated to cooperating brokers that the commission established in the listing agreement might not be paid. *(Revised 11/98)* [M]

**Section 2**
**Definition of MLS Participant**
**(Policy Statement 7.9)**

Where the term REALTOR® is used in this explanation of policy in connection with the word member or the word participant, it shall be construed to mean the REALTOR® principal or principals, of this or any other association, or a firm comprised of REALTOR® principals participating in a multiple listing service owned and operated by the board. Participatory rights shall be held by an individual principal broker unless determined by the association or MLS to be held by a firm. It shall not be construed to include individuals other than a principal or principals who are REALTOR® members of this or any other association, or who are legally entitled to participate without association membership. However, under no circumstances is any individual or firm, regardless of membership status, entitled to

---

*Compensation is unconditional except where local MLS rules permit listing brokers to reserve the right to reduce compensation offers to cooperating brokers in the event that the commission established in a listing contract is reduced by court action. Refer to Part Two, G., Section 1, Information Specifying the Compensation on Each Listing Filed with a Multiple Listing Service of an Association of REALTORS®, *Handbook on Multiple Listing Policy. (Adopted 11/98, Revised 11/09)*

These policy prohibitions are subject to and limited by applicable statutes, ordinances, and governmental regulations, to agreements entered into by an MLS or board or association of REALTORS® and an agency of government, and to final decrees of courts or administrative agencies.

This policy does not prohibit boards or associations of REALTORS® or their MLSs from adopting rules or policies establishing the legitimate uses of MLS information, from prohibiting unauthorized uses of MLS information, or from establishing rules or policies necessary to prevent illegal collective action, including price-fixing and boycotts.

It is the duty and responsibility of all boards and associations of REALTORS® and MLSs owned by or controlled by boards or associations of REALTORS® to ensure that all bylaws, rules, regulations, and other governance provisions comply with all mandatory multiple listing policies of the NATIONAL ASSOCIATION OF REALTORS®. Boards and associations of REALTORS® failing to conform with these policies will be required to show cause why their charters should not be revoked.

The numbered references refer to the official interpretations of Article I, Section 2 of the bylaws of the NATIONAL ASSOCIATION OF REALTORS®. *(Amended 11/04)* **M**

## B. Structure

**Section 1**
**Types of Multiple Listing Services**

Basically, there are two types of multiple listing activities used by associations of REALTORS®. The essential characteristics of each may be summarized as follows:

1. A multiple listing activity available for voluntary participation, but requiring members (principals) who participate to submit all listings of designated types of property, is termed "a mandatory listing service."

   The mandatory service permits each REALTOR® to decide whether or not multiple listing is consistent with the REALTOR®'s method of doing business. If a decision is made to participate in the activity, however, then all listings covered by the rules are required to be submitted.

2. A multiple listing activity available to all members (principals), but the submission of any listing is an option of the member; this is termed "a voluntary listing service."

**Note:** Any multiple listing activity in which it is compulsory that all members of an association of REALTORS® participate and submit information on all designated types of listings would be in direct conflict with the National Association's bylaws, Article I, Section 2, which bans the adoption by associations of REALTORS® of inequitable limitations on membership. On November 15, 1960, the Board of Directors of the National Association officially adopted the following interpretation: "A requirement to participate in a multiple listing service in order to gain or maintain REALTOR® membership is an inequitable limitation on membership." **I**

**Section 2**
**Association and MLS Compliance with National Association Policy**
**(Policy Statement 7.17)**

Those associations or multiple listing services found by the National Association to be operating under bylaws or rules and regulations not approved by the National Association are not entitled to errors and omissions insurance coverage and their charters are subject to review and revocation. **I**

8

**Repeat Category 3 violation** (within three [3] years):

Possible discipline:

- Attendance at relevant education session(s) or course
- Fine of $15,000 or less
- Suspension from MLS or from use of the MLS' lockbox key access for six (6) months or less
- Termination from MLS or from use of the MLS' lockbox key access for 1 to 3 years

Any combination of the above

MLSs are encouraged to use the MLS Schedule of Fines Table provided in Appendix 4 to establish standardized administrative sanctions for violations of the MLS rules.

### Scope of MLS Handbook for addressing MLS Rule Violations

Potential violations of the MLS rules will be processed in accordance with MLS Policy Statement 7.21, and under the process provided for in Section 9 of the NAR model MLS Rules and Regulations. Potential violations of a data license agreement are not governed by NAR policy and will thus follow the terms for resolution in the agreement itself. *(Amended 11/20)* [I]

## G. Commission/Cooperative Compensation Offers

**Section 1**
**Information Specifying the Compensation on Each Listing Filed with a Multiple Listing Service of an Association of REALTORS®**
**(Policy Statement 7.23)**

In filing property with the multiple listing service, participants make blanket unilateral offers of compensation to the other MLS participants and shall therefore specify on each listing filed with the service the compensation being offered by the listing broker to the other MLS participants. This is necessary because cooperating participants have the right to know what their compensation will be prior to commencing their efforts to sell.* *(Revised 11/04)*

The listing broker retains the right to determine the amount of compensation offered to subagents, buyer agents, or to brokers acting in other agency or nonagency capacities, which may be the same or different. *(Revised 11/96)*

This shall not preclude the listing broker from offering any MLS participant compensation other than the compensation indicated on his listings as published by the MLS, provided the listing broker informs the other broker in writing in advance of their submitting an offer to purchase and provided that the modification in the specified compensation is not the result of any agreement among all or any other participants in the service. Any superseding offer of compensation must be expressed as either a percentage of the gross sales price or as a flat dollar amount. *(Amended 05/10)*

While offers of compensation made by listing brokers to cooperating brokers through MLS are unconditional (except where MLS rules create specific exceptions as specified elsewhere in this policy statement), a listing broker's obligation to compensate a cooperating broker who was the procuring cause of sale (or lease) may be excused if it is determined through arbitration that, through no fault of the listing broker and in the exercise of good faith and reasonable care, it was impossible or financially unfeasible for the listing broker to collect a commission pursuant to the listing agreement. In such instances, entitlement to cooperative compensation offered through MLS would be a question to be determined by an arbitration hearing panel based on all relevant facts and circumstances including, but not limited to, why it was impossible or financially unfeasible for the listing broker to collect some or all of the commission established in the listing agreement; at what point in the transaction did the listing broker know (or should have known) that some or all of the commission established in the listing agreement might not be paid; and how promptly had the listing broker communicated to cooperating brokers that the commission established in the listing agreement might not be paid. *(Amended 11/98)*

---

*Relates to Point No. 2 of the MLS antitrust compliance policy.

The multiple listing service shall not have a rule requiring the listing broker to disclose the amount of total negotiated commission in his listing contract, and the multiple listing service shall not publish the total negotiated commission on a listing which has been submitted to the MLS by a participant. The multiple listing service shall not disclose in any way the total commission negotiated between the seller and the listing broker.

**Note 1:** The compensation specified on listings filed with the multiple listing service by the participants of the service shall be expressed as a percentage of the gross sales price or as a definite dollar amount. Multiple listing services may, as a matter of local discretion, allow participants to offer cooperative compensation as a percentage of the net sales price, with net sales price defined as the gross sales price minus buyer upgrades (new construction) and seller concessions (as defined by the MLS unless otherwise defined by state law or regulation). The essential and appropriate requirement by a multiple listing service is that the information to be published shall clearly inform the participants as to the compensation they will receive in cooperative transactions unless advised otherwise by the listing broker in writing in advance of their submitting an offer to purchase. *(Amended 5/10)*

Multiple listing services shall not publish listings that do not include an offer of compensation expressed as a percentage of the gross selling price or as a definite dollar amount, nor shall they include general invitations by listing brokers to other participants to discuss terms and conditions of possible cooperative relationships. *(Amended 11/96)*

**Note 2:** Multiple listing services, at their discretion, may adopt rules and procedures enabling listing brokers to communicate to potential cooperating brokers that gross commissions established in listing contracts are subject to court approval, and that compensation payable to cooperating brokers may be reduced if the gross commission established in the listing contract is reduced by a court. In such instances, the fact that the gross commission is subject to court approval and either the potential reduction in compensation payable to cooperating brokers or the method by which the potential reduction in compensation will be calculated must be clearly communicated to potential cooperating brokers prior to the time they submit an offer that ultimately results in a successful transaction. *(Amended 5/10)*

**Note 3:** Multiple listing services must give participants the ability to disclose to other participants any potential for a short sale. As used in MLS rules, short sales are defined as a transaction where title transfers, where the sales price is insufficient to pay the total of all liens and costs of sale, and where the seller does not bring sufficient liquid assets to the closing to cure all deficiencies. Multiple listing services may, as a matter of local discretion, require participants to disclose short sales when participants know a transaction is a potential short sale. In any instance where a participant discloses a potential short sale, they may, as a matter of local discretion, be permitted to communicate to other participants how any reduction in the gross commission established in the listing contract required by the lender as a condition of approving the sale will be apportioned between the listing and cooperating participants. Where participants are permitted to communicate to other participants how any reduction in the gross commission established in the listing contract required by the lender as a condition of approving the sale will be apportioned between the listing and cooperating participants, multiple listing services may, as a matter of local discretion, require listing participants to disclose to cooperating participants in writing the total reduction in the gross commission and the amount by which the compensation payable to the cooperating broker will be reduced within _____ hours of receipt of notification from the lender. All confidential disclosures and confidential information related to short sales, if allowed by local rules, must be communicated through dedicated fields or confidential "remarks" available only to participants and subscribers. *(Amended 5/10)* [M]

40